UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELLEN UMANSKY,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>MELTON INTERNATIONAL TACKLE, INC., ET AL.,<br><br>　　　　　　　Defendants. | CIVIL ACTION<br><br>No. 2:17-cv-04712 |

**BRIEF IN SUPPORT OF THE MOTION OF MELTON INTERNATIONAL TACKLE, INC. FOR AN ORDER VACATING DEFAULT JUDGMENT PURSUANT TO FED. R. CIV. P. 60(b)**

Defendant Melton International Tackle, Inc. ("MIT"), by and through its undersigned counsel, hereby submits this Brief in support of the *Motion of Melton International Tackle, Inc. for an Order Vacating Default Judgment Pursuant to Fed. R. Civ. P. 60(b)* (the "Motion"), and sets forth as follows:

**PROCEDURAL HISTORY**

Plaintiff Ellen Umansky ("Plaintiff") initiated this action by filing a complaint in the Court of Common Pleas of Bucks County, Pennsylvania on September 29, 2017. On October 23, 2017, Defendants Discover Bank, Discover Services, LLC, and Discover Financial Services, LLC (collectively, "Discover") filed a notice of removal and removed this matter to this Court. On November 14, 2017, Plaintiff filed an amended complaint (the "First Amended Complaint"), which was served with a summons on MIT at MIT's business address via certified mail, but was only addressed to MIT, not to a director or officer of MIT. A true and correct copy of the return card for the purported service of the Amended Complaint on MIT is attached hereto as Exhibit A. On December 18, 2017, Plaintiff filed a second amended complaint (the "Second Amended Complaint").

On June 5, 2018, Plaintiff filed a request for default (the "Request for Default") against MIT, which resulted in a default (the "Default") being entered against MIT on that same date. On September 6, 2018, Plaintiff filed a motion (the "Motion to Assess") for a hearing to assess damages and for entry of a default judgment against MIT. Pursuant to an Order entered on September 12, 2018, a hearing (the "Judgment Hearing") on the Motion to Assess is was scheduled for September 26, 2018. As a representative of MIT did not appear at the Judgment Hearing, a default judgment was entered against MIT in the amount of $45,187.00 (the "Default Judgment").

## **BACKGROUND**

The Second Amended Complaint sets forth four counts against MIT, consisting of: (I) Breach of contract and Breach of Implied Good Faith & Fair Dealing; (II) Unjust Enrichment; (III) Fraud and Fraudulent Misrepresentation; and (IV) Violations of Pennsylvania Unfair Trade Practices & Consumer Protection Law.

The claims contained within the Complaint are based on the underlying allegation that MIT did not disclose its return policy to Plaintiff when Plaintiff purchased ten (10) fishing reels (the "Purchase") from MIT. The Complaint attempts to support this allegation by further alleging that Plaintiff spoke with a sales representative and specifically inquired as to whether or not the Purchase could be returned, to which Plaintiff alleges that she received an unconditional affirmative response. However, MIT's return policy includes a 20% restocking fee. This restocking fee was particularly important with respect to the Purchase as MIT had insufficient inventory to immediately supply two (2) of the reels (the "Special Order Reels") and was forced to special order them from the manufacturer, which, upon MIT returning the Special Order Reels, would subject MIT to a 20% restocking fee. MIT contests the allegation that its return

policy was misrepresented to Plaintiff and contests a large portion of the supporting allegations contained in the Complaint.

MIT initially consulted with counsel to represent it with respect Plaintiff's claims against MIT. On MIT's behalf, attorney Jonathan Stein, contacted attorney Gary Schafkopf, one of the attorneys representing Plaintiff. Attorney Stein and attorney Schafkopf discussed Plaintiff's claims against MIT and, in order to provide time for MIT to obtain local counsel and to allow for Plaintiff and MIT to attempt to resolve those claims, attorney Schafkopf orally agreed not to enter a default against MIT without first providing a period of notice to attorney Stein. This oral agreement was memorialized by a letter (the "Agreement Letter") faxed to attorney Schafkopf by attorney Stein.[1] A true and correct copy of the Agreement Letter is attached hereto as Exhibit B.

After being surprised by the entry of the Default at Plaintiff's request, attorney Stein contacted attorney Matthew Weisberg, who also represents Plaintiff, on September 12, 2018, by email. A true and correct copy of this email is attached hereto as Exhibit C. The email brought the existence of the agreement between attorney Stein and attorney Schafkopf relating to entry of a default to attorney Weisberg's attention and referenced the Agreement Letter. Despite being made aware of the agreement, attorney Weisberg has did not vacate the Default or, upon information and belief, take any steps to notify the Court that the Default was entered in violation of the agreement.

Based on the agreement between attorney Stein and attorney Schafkopf that a default would not be entered against MIT without notice, MIT is filing this instant Motion requesting

---

[1] The Agreement Letter refers to no default being entered against "Mr. Melton," but the subsequent reference to "Melton International" and the content of the Agreement Letter and nature of both the conversation between attorneys Stein and Schafkopf and the nature of this action make it clear that MIT was the party to which the agreement related.

that the Court vacate the Default Judgment entered in violation of the agreement and allow MIT to defend against the claims contained in the Second Amended Complaint.

**ARGUMENT**

There is a strong preference that cases be disposed on the merits whenever practicable. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984) (*citing United States v. $55,518.05 in U.S. Currency*, No. 82-2758, slip op. at 6 (3d Cir. Feb. 21, 1983); *Gross v. Stereo Component Systems Inc.*, 700 F.2d 120, 122 (3d Cir. 1983); *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982); *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982). Rule 55(c) of the Federal Rules of Civil Procedure (the "Rules") provides that, "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c) Rule 60(b) of the Rules provides that a Court may relieve a party from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Rule 60(c) sets a restriction on the timing of a motion for relief from a judgment pursuant to Rule 60(b), which requires that a party's motion for relief from a judgment be filed "within a reasonable time," and, specifically for motions based on Rule 60(b)(1)-(3), that such a motion must be filed within one (1) year after entry of the judgment. Fed. R. Civ. P. 60(c).

The Third Circuit prescribed three factors a court should use when deciding whether to vacating a default judgment, consisting of: "1) whether the plaintiff will be prejudiced if the

4

default is lifted; 2) whether the defendant has a meritorious defense; and 3) whether the default was the result of the defendant's culpable misconduct." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (*citing United States v. $55,518.05 in U.S. Currency*, No. 82-2758, slip op. at 6 (3d Cir. Feb. 21, 1983)).

I. **MIT's Request to Vacate the Default Judgment is Being Made Within a Reasonable Time**

Based on the agreement between the attorney's for MIT and Plaintiff, MIT was not anticipating the default Judgment being entered. However, Plaintiff pressed for the entry of the Default Judgment and eventually obtained a writ of execution. When MIT because aware that Plaintiff not only improperly obtained the Default Judgment but was now attempting to collect on it, MIT retained local counsel to seek to vacate the Default Judgment. The delay between the entry of the Default Judgment and the filing of this instant Motion is not substantial and will not hamper the Parties' ability to litigate this matter.

II. **The Default Judgment Should be Vacated Because Plaintiff Failed to Properly Serve MIT**

Rule 4(c)(1) of the Rules states that, "A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." Fed. R. Civ. P. 4(c)(1).

Rule 5(h)(1)(B) of the Rules provides that service of process upon a corporation may be accomplished by, "[D]elivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 5(h).

Plaintiff attempted to serve MIT with a copy of the Amended Complaint and corresponding summons by certified mail. However, the address listed on the certified mail return filed by Plaintiff shows that the Complaint was not sent to the attention of an officer or director of MIT. *See* Exhibit A. Accordingly, MIT never received service of original process compliant with the Rules. Any prejudice that Plaintiff suffers through the vacating of the Default Judgment is justified as the result of Plaintiff's own failure to follow the Rules. Plaintiff's failure to properly serve MIT with a complaint and summons in this matter justified the Court setting aside the Default Judgment based on Rule 60(b)(6).

### III. The Default Should be Vacated Due to the Agreement Between Counsel for Plaintiff and Counsel for MIT Regarding Entry of a Default

In this instant action, cause exists to justify vacating the Default Judgment based on Plaintiff's violation of its agreement conditioning entry of the Default and the factors enumerated in *Hritz*. First, there will be no prejudice to Plaintiff. Plaintiff and MIT are yet to engage in any substantive litigation relating to the claims alleged by Plaintiff. Plaintiff's investment into this matter, other than with respect to its claims against Defendant Discover,[2] is modest. Further, Plaintiff's counsel and MIT's counsel communicated regarding this action and, in December of 2017, reached an agreement that no default would be entered against MIT without Plaintiff's counsel first providing notice to MIT's counsel. The purpose of this agreement was to allow for MIT to retain local counsel to defend this action and to allow additional time for Plaintiff and MIT to attempt to resolve Plaintiff's claims. This agreement was memorialized in the Agreement Letter, which MIT's counsel faxed to Plaintiff's counsel soon after the agreement was made. *See* Exhibit B. Based on the agreement, Plaintiff's Request for Default was improper and the subsequent entry of the Default Judgement stripped MIT of its right to respond to the Second

---

[2] Plaintiff voluntarily dismissed her claims against Discovery with prejudice.

Amended Complaint. As Plaintiff violated the Agreement by submitting the Request for Default, Plaintiff will not be prejudiced by the resulting Default Judgment being vacated and the Parties being returned to their respective positions that existed prior to the Default being entered.

Second, MIT has meritorious defenses to Plaintiff's claims. MIT had no intention of allowing the Default to be entered and considers Plaintiff's claims contested. For this reason, MIT acted to preserve its right to respond to Plaintiff's claims through the agreement conditioning the entry of a default against MIT. MIT has meritorious defenses as its return policy, which includes the 20% restocking fee, is clear and available to its customers. Further, MIT contests, as alleged in the Complaint, that any of its employees communicated to Plaintiff that there was no restocking fee or that MIT's return policy was without conditions. All of the claims against MIT included in the Complaint rely entirely on Plaintiff's allegation that she was misinformed, misled, or otherwise provided with a representation that Plaintiff's return of the Purchase would not be subject to a restocking fee. As MIT contests this and is prepared to offer evidence to the contrary, MIT has a meritorious defense that strikes at the heart of Plaintiff's claims. Accordingly, MTI requests that, in addition to the Court setting aside the Default, that the Court provide MTI with fourteen (14) days to respond to the Second Amended Complaint.

Finally, MIT's conduct with respect to this action has been reasonable, appropriate, and did not lead to the entry of the Default Judgment. MIT secured an agreement with Plaintiff's counsel establishing that MIT would be given notice and an opportunity to respond to Plaintiff's Complaint prior to Plaintiff requesting entry of a default. Disregarding that agreement, Plaintiff filed the Request for Default that resulted in the Default Judgment being entered. The Request for Default was filed by Plaintiff without any advance notice to MIT, leaving MIT with no opportunity to file a response to the Second Amended Complaint following Plaintiff's decision

not to honor the agreement. MIT also attempted to have Plaintiff set aside the Default after it was entered in order to avoid involving the Court in this issue, but was unsuccessful. See Exhibit C. Although the Defendant did not attend the Damages Hearing, Plaintiff not honoring its agreement relating to the Default was not anticipated by MIT and MIT expected Plaintiff's counsel to correct the record with respect to the Default being improperly entered. MIT's reliance on Plaintiff's to do so may have been in vain, but it was reasonable conduct given that MIT otherwise would have been required to retain local counsel and send one of its representatives from California to Pennsylvania to attend a hearing that never should have gone forward. MIT is not culpable with respect to the entry of the Default Judgment and, if the Default Judgment is vacated, intends to continue to defend itself against Plaintiff's claims.

## CONCLUSION

WHEREFORE, MIT respectfully requests that the Court enter an order vacating the Default Judgment, and for such other relief as the Court finds just and proper.

**BIELLI & KLAUDER, LLC**

Date: April 22, 2019
/s/ Thomas D. Bielli
Thomas D. Bielli, Esquire
Cory P. Stephenson, Esquire
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
Phone: 215-642-8271
Fax: 215-754-4177
tbielli@bk-legal.com
cstephenson@bk-legal.com

*Counsel to Defendant*
*Melton International Tackle, Inc.*

# Exhibit A

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Melton International Tackle, Inc.
1375 S. State College Blvd.
Anaheim, CA 92806

9590 9402 1768 6074 6976 12

2. Article Number
113 1090 0001 7466 9297

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☒ Addressee

B. Received by (Printed Name)    C. Date of Delivery
                                  8-2-17

D. Is delivery address different from item 1? ☐ Yes  ☐ No
If YES, enter delivery address below:

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Discover Financial Services, LLC, d/b/a Discover Bank
2500 Lake Cook Road
Riverwoods, IL 60015

9590 9402 1768 6074 6975 82

7013 1090 0001 7466 9327

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Will Johnson    ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes  ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Discover Financial Services, Inc
d/b/a Discover Bank
2500 Lake Cook Road
Riverwoods, IL 60015

9590 9402 1768 6074 6975 99

7013 1090 0001 7466 9310

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Will Johnson    ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes  ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

# Exhibit B



5050 Laguna Blvd, Suite 112-325 | Elk Grove, CA 95758 | 916.247.6868 | www.jonathangstein.com

December 8, 2017

VIA FAX 888-238-1334
Mr. Gary Schafkopf
Schafkopf Law
11 Bala Ave
Bala Cynwyd, PA 19004


    Re:    Umansky v. Melton et al


Dear Mr. Schafkopf:

    I am counsel for Mr. Tracy Melton and Melton International Tackle. This will confirm our conversation of today wherein you agreed not to take a default of Mr. Melton without giving me notice so that Mr. Melton and Melton International can obtain local counsel to file a responsive pleading. This will give us time to sort out the pleadings and try to resolve this matter.


                              Sincerely,


                              By:_____
                              Jonathan G. Stein

# Exhibit C



Jonathan Stein <jonathan@jonathangstein.com>

# Re: Activity in Case 2:17-cv-04712-JHS UMANSKY v. MELTON INTERNATIONAL TACKLE et al Order to Show Cause

**Jonathan Stein** <jonathan@jonathangstein.com>  Wed, Sep 12, 2018 at 6:02 PM
To: "Matthew B. Weisberg, Esq." <mweisberg@weisberglawoffices.com>
Cc: Gary Schafkopf <gary@schaflaw.com>

On December 8, Gary and I had a conversation where this was agreed. This was sent in a letter to him confirming. I will send it to you tomorrow, if he does not have it.

I would expect you would follow your obligations to the court to notify them that there was an agreement, default was entered despite the agreement, and you would set that aside so that we could resolve this matter.

In the meantime, it is clear that your clients want to use the credit and have offered to sign a release if they obtain the store credit. That offer has been made to you numerous times and you have simply ignored it.

[Quoted text hidden]