IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELLEN UMANSKY,<br><br>                  Plaintiff,<br><br>    v.<br><br>MELTON INTERNATIONAL TACKLE,<br>INC.,<br><br>                 Defendant. | CIVIL ACTION<br>NO. 17-4712 |

## OPINION

**Slomsky, J.**                                                                 **October 22, 2019**

## I.      INTRODUCTION

Before the Court are two Motions filed by Defendant Melton International Tackle, Inc.: (1) a Motion for an Order Vacating [a] Default Judgment Pursuant to Fed. R. Civ. P. 60(b) (Doc. No. 33), and (2) a Motion to Quash [a] Writ of Execution (Doc. No. 34).  Defendant filed the instant Motions on April 22, 2019, seeking Orders to vacate the Default Judgment (Doc. No. 30) entered in favor of Plaintiff Ellen Umansky and to quash the Writ of Execution on the Judgment (Doc. No. 32).  On March 7, 2019, the Court held a hearing on Defendant's Motions.  (See Doc. No. 40.)  At the hearing, counsel for the parties presented arguments in support of their respective positions, and following the hearing, both parties submitted supplemental memorandums.  (See Doc. Nos. 47, 48.)  After consideration of the counsels' arguments and the filings of record, the Court will deny Defendant's Motions.

## II.      BACKGROUND

This case resulted from a dispute about the purchase, shipment, and return of high-end fishing reels that Plaintiff purchased from Defendant.  She contends that Defendant misled her

about the return policy, overcharged her for shipping costs, and failed to refund the purchase price of merchandise that she never received. The following facts explain Plaintiff's claims in more detail.[1]

In December 2016, Plaintiff decided to purchase fishing reels to gift as Christmas presents. (Doc. No. 13 at 3.) On December 21, 2016, she called Defendant, a big-game fishing supply company, and spoke with one of its sales representatives. (Id.) Also on the call was Plaintiff's friend, George Barnard, whom she enlisted to help her coordinate the purchase. (Id.) Barnard, a former fishing reel retailer, led the conversation and acted as her agent. (Id. at 3-4.)

The record makes clear that Barnard tried to ensure that Plaintiff could return the fishing reels. First, Barnard advised Plaintiff to order the fishing reels in silver, their standard color. (Id. at 4.) Second, Barnard informed Defendant's sales representative that Plaintiff intended to purchase the fishing reels as Christmas presents and that the fishing reels may need to be returned. (Id.) And third, Barnard instructed the sales representative to send the fishing reels without fishing lines installed so that they would remain in a "new" condition and be capable of return, if necessary. (Id.) Defendant's sales representative confirmed that Plaintiff would be able to return the fishing reels. (Id.) He made no mention of any terms or conditions of return other than that the reels remain in "new" condition. (Id.)

---

[1] Plaintiff's well-pleaded, factual allegations contained in her Second Amended Complaint, except those relating to the amount of damages, are taken as true and treated as though they are established by proof. See E. Elec. Corp. of New Jersey v. Shoemaker Const. Co., 652 F. Supp. 2d 599, 605 (E.D. Pa. 2009) ("Once a default judgment has been entered, the well-pleaded, factual allegations of the complaint, except those relating to the damage amount, are accepted as true and treated as though they were established by proof.") (citing Coastal Mart, Inc. v. Johnson Auto Repair, Inc., 2001 WL 253873, at *2 (E.D. Pa. Mar. 14, 2001)); Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

Later in the day, Plaintiff called Defendant to finalize the purchase of twelve fishing reels: six Accurate ATD-30 fishing reels and six Accurate ATD-50W fishing reels. (Id.) At that time, Defendant only had four Accurate ATD-50W fishing reels in stock, so two Accurate ATD-50W fishing reels were placed on back-order and were shipped and billed separately. (Id.) The cost of the first shipment of ten fishing reels was $12,236.46, which included $196.56 in shipping fees. (Id.) The cost of the second shipment of the back-ordered fishing reels was $2,629.97, including $59.99 in shipping fees. (Id. at 7.) The first order was delivered to Plaintiff on December 24, 2016. (Id. at 6.)

On December 27, 2016, Plaintiff called Defendant to return the already-delivered fishing reels and cancel her order for the back-ordered fishing reels. (Id. at 7.) While on the call, Defendant's sales representative provided her with a return authorization form, and confirmed that she would be refunded her money in two-to-four weeks and that the back-ordered shipment would be cancelled. (Id.) On December 28, 2016, Plaintiff mailed the fishing reels back to Defendant. (Id. at 8.) Defendant confirmed receipt of the reels on January 5, 2017. (Id.)

By January 10, 2017, Plaintiff had not received a refund for the fishing reels she had returned. (Id.) To make matters worse, Plaintiff's credit card was charged for the back-ordered fishing reels, even though the order was supposedly cancelled. (Id.) To correct these errors, she made numerous telephone calls to Defendant. (Id.) Her calls were not returned. (Id.) Plaintiff then sent an email to Defendant inquiring about the status of her refund. (Id.) The next day, on January 11, 2017, a sales representative returned Plaintiff's email and informed her that she was only eligible for store-credit, rather than a refund, and the store-credit was subject to a 20% restocking fee. (Id.)

Not satisfied with this response, Plaintiff resorted to litigation. She eventually filed a Complaint in the Court of Common Pleas of Bucks County, Pennsylvania on September 29, 2017. (Doc. No. 34 at 1.) In her Complaint, Plaintiff named as defendants Melton International Tackle, Inc. ("Melton" or "Defendant"), Discover Financial Services, Inc., Discover Bank, and Discover Financial Services, LLC. (Doc. No. 1 at 1.) With respect to Melton, Plaintiff brought claims for breach of contract, fraud, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. (Id. at 26-27, 30-31.) On October 20, 2017, the Discover defendants removed the case to this Court based on both federal question jurisdiction and diversity of citizenship jurisdiction.[2] (Doc. No. 1 at 5.)

Once in federal court, Plaintiff amended her original complaint twice. On November 14, 2017, Plaintiff filed a First Amended Complaint (Doc. No. 6) and served Defendant by certified mail on December 2, 2017. (See Doc. No. 10.) On December 18, 2017, Plaintiff filed a Second Amended Civil Complaint (Doc. No. 13), seeking redress against Defendant for the following claims:

1. Breach of contract and breach of the implied duty of good faith and fair dealing (Count I);

2. Unjust enrichment (Count II);

3. Fraud and fraudulent misrepresentation (Count III); and

4. Violation of the Pennsylvania Unfair Trade Practices & Consumer Protection Law, 73 P.S. § 201-1 et seq. (Count IV).

---

[2] On June 5, 2018, Plaintiff filed a notice of voluntary dismissal against all Discover defendants. (See Doc. No. 25.) On June 6, 2018, the Court issued an Order dismissing the claims against the Discover defendants with prejudice. (Doc. No. 26.) As a result, only Melton remains in this case.

(See Doc. No. 13.)  Plaintiff served Defendant the Second Amended Complaint by ECF notice filing and regular mail on December 14, 2017.  (Id. at 22.)

The events that transpired between the filing of the First Amended Compliant (Doc. No. 6) and the Second Amended Civil Complaint (Doc. No. 13) are a source of contention.  Defendant's counsel claims that on December 8, 2017, Plaintiff's counsel and Jonathan Stein, Defendant's California counsel, agreed that Plaintiff would not seek a default judgment without providing notice to Defendant.  (Doc. No. 33 at 3.)   In addition, Defendant alleges that the agreement was memorialized in a letter sent by Attorney Stein to Plaintiff's counsel the same day (the "Notice Letter").  (Id. at 12.)  The Notice Letter reads:

> Dear Mr. Schafkopf:
>
> I am counsel for Mr. Tracy Melton and Melton International Tackle. This will confirm our conversation of today wherein you agreed not to take a default of Mr. Melton without giving me notice so that Mr. Melton and Melton International can obtain local counsel to file a responsive pleading. This will give us time to sort out the pleadings and try to resolve this matter.
>
> Sincerely,
>
>
> By: _____
>       Jonathan G. Stein

(Id.)  Notably, the Notice Letter was unsigned and the outgoing fax number, which was ostensibly meant to be the fax number for Plaintiff's counsel, was incorrect.[3]  Plaintiff's counsel denies that an agreement existed.  (Doc. No. 44 at 48.)

---

[3] The outgoing fax number on the Notice Letter transposed the numbers 8 and 3.  Plaintiff counsel's fax number is (888) 283-1334, while the outgoing number listed is (888) 238-1334.  (Doc. No. 44 at 22.)

On June 5, 2018, more than five months after Defendant was served with the Second Amended Complaint, Plaintiff filed a Request for Default (Doc. No. 24), seeking a default against Defendant pursuant to Rule 55 of the Federal Rules of Civil Procedure for failure to appear, plead or otherwise defend. Defendant was served the Request for Default the same day via e-filing and regular mail. (Id. at 2.) On June 6, 2018, a default was entered against Defendant. (Doc. No. 27.)

From late-July to mid-August 2018, counsel for the parties made sporadic overtures to reach a settlement. Emails were exchanged between counsel that show the parties held at least one phone call to try to resolve the matter. (See Doc. No. 37-1 at 4.) There was also other occasional email correspondence. (See id.) The emails from this period make clear that Defendant was aware that a default had been entered against it. On August 14, 2018, in response to an email about settlement from Attorney Stein, Plaintiff's counsel wrote: "[W]e have a default against your client[.] What [settlement offer] are you proposing?" (Id. at 5.) Attorney Stein countered that Defendant's offer remained $11,000 in store credit – unchanged from the terms offered before litigation began. (Id. at 6.)

On September 6, 2018, Plaintiff filed a motion seeking a default judgment. It was titled as a Motion to Schedule an Evidentiary Hearing to Assess Damages and Judgment (Doc. No. 27). Defendant was provided a copy via e-filing and regular mail. (Id. at 5.) The following week, on September 11, 2018, the Court entered an Order scheduling a show-cause hearing on the Motion for September 26, 2018 (Doc. No. 28). Defendant was served with a copy of this Order via Federal Express overnight mail. (See Doc. No. 29.)

On Monday, September 24, 2018, two days before the show-cause hearing, Defendant made a final attempt at settlement. Thomas Bielli, Defendant's local counsel, sent an email to Plaintiff's counsel increasing Defendant's settlement offer to $11,687 in store credit or $5,000 in

cash.  (Doc. No. 37-1 at 1.)  Attorney Bielli stated that the offer was good until 11:00 a.m. the next day.  (Id. at 1-2.)  Plaintiff's counsel responded immediately and requested an extension of the offer's expiration date because he would not be able to confer with Plaintiff in less than 24 hours.  (Id. at 1.)  In addition, Plaintiff's counsel gave Defendant permission to seek a continuance of the show-cause hearing.  (Id.)  In a subsequent email, Attorney Bielli confirmed that he "sent [the] extension/continuance suggestion to [Defendant]."  (Id. at 2.)

Defendant opted not to extend the offer of settlement expiration date and, on September 25, 2018 at 11:00 a.m., the offer terminated.  (Id.)  Defendant also made no effort to seek a continuance of the show-cause hearing.  (Id.)  However, instead of appearing in court to contest the entry of a default judgment, Defendant did not attend the hearing and did not retain Attorney Bielli or other local counsel to represent him.  (Id. at 3; Doc No. 44 at 34-35.)  Consequently, at the hearing held the next day, the Court issued an Order granting Plaintiff's motion for an entry of judgment by default and entered judgment in favor of Plaintiff.  The award in favor of Plaintiff and against Defendant included:

1.  On Counts I, II, and III, compensatory damages in the amount of $14,929; and

2.  On Count IV, treble damages in the amount of $44,787 for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, plus $400 in costs.

(Doc. No. 30.)  The total amount awarded was $45,187.  (Id.)  On March 18, 2019, Plaintiff filed a Praecipe for Writ of Execution directing the United States Marshal for the Eastern District of Pennsylvania to garnish Defendant's bank account to satisfy the $45,187 judgment.  (Doc. No. 32.)  Plaintiff's Writ was executed the same day.  On April 15, 2019, Defendant's bank account was frozen pursuant to the Writ.  (Doc. No. 34 at 2.)

With its bank account frozen, Defendant finally took action after being litigation-dormant for more than eighteen months. On April 22, 2019, Defendant filed the instant Motions to Vacate [the] Default Judgment (Doc. No. 33) and to Quash the Writ of Execution (Doc. No. 34). In the memorandum that accompanied the Motions, Defendant argues that the default judgment should be set aside because Plaintiff's counsel breached the agreement not to seek default against Defendant without notice and because Plaintiff failed to properly serve Defendant. (Doc. No. 33 at 3, 5.)

On May 7, 2019, this Court held a hearing on Defendants Motions. (See Doc. Nos. 40, 44.) During the hearing, counsel for the parties recited their respective positions. Defense counsel argued that the default judgment should be vacated under Rule 60(b)(1) or 60(b)(3) of the Federal Rules of Civil Procedure for excusable neglect or misconduct, or under Rule 60(b)(6), which is a catch-all provision for any other reason that justifies relief. (Doc. No. 44 at 18.) Defendant also argued that the default judgment should be vacated because of defective service because the parcel containing the summons and First Amended Complaint was not specifically addressed to an officer, director or agent of Defendant. (Id. at 14.) As discussed infra, the Court presumes that Defendant's improper service argument focuses on the First Amended Complaint in an attempt to invalidate the Court's personal jurisdiction over Defendant under the theory that Plaintiff's initial service in federal court did not comply with Rule 4 of the Federal Rules of Civil Procedure. Defendant does not contend here that service of the Second Amended Complaint was insufficient.

With respect to Defendant's arguments under Rule 60(b), Defense counsel summarized his arguments as follows:

> "[Under Rule 60(b)(1)], a party can obtain relief from a final judgment for . . . mistake, inadvertence, surprise, [or] excusable neglect. The standard . . ., which is excusable neglect, [is] based on the Defendant believing that the Plaintiff would correct the record

with respect to the existence of the agreement. I think that there is an argument for excusable neglect . . . [because] the Defendant did not simply ignore the default judgment, the defendant attempted to contact counsel for the Plaintiff to have them correct the record and vacate the default."

Furthermore:

". . . and then 60(b)(3), Your Honor, [for] fraud, misrepresentation, or misconduct by an opposing party. Obviously, those [standards] are open to interpretation based on the facts[,] but I would say [a violation of the terms of the Notice Letter was a] misrepresentation or misconduct by an opposing party, . . . [and] a request for a default in violation of [the] agreement is ultimately a [mis]representation to the Court."

Lastly:

"The other provision, . . . Rule 60(b)(6) [,which allows a default judgment to be set aside for] any other reason that justifies relief, in line with the Court's typical holding that matters should be adjudicated on the merits as opposed to defaults. I think that the idea that an agreement should be available for parties to essentially modify responsive deadline for the purposes of obtaining settlement [is] certainly not uncommon. It's beneficial to … avoid[] unnecessary time and expenditures . . .. It's only going to promote judicial efficiency and I think that the Court … vacating default judgment in this case . . . would fall in line with 60(b)(6)[.]"

(Id. at 18.)

Plaintiff countered that the Motions should be denied because the facts of the case rebut Defendant's arguments for relief under Rule 60(b). Specifically, Plaintiff's counsel stated that the alleged agreement between counsel did not exist and argued that the Notice Letter offered Defendant little support given the discussions between counsel during the eighteen months between the Notice Letter's alleged dispatch and execution of the Writ. (See id. at 48, 22.)

On June 21, 2019, the Court issued an Order permitting the parties to file supplemental memorandums in support of their respective positions. (Doc. No. 46.) Consistent with the Order,

Plaintiff and Defendant filed post-hearing supplemental briefs on July 5, 2019 and July 8, 2019, respectively.  (Doc. No. 47; Doc. No. 48.)

## III.    ANALYSIS

Defendant seeks relief under Rule 60(b) or, in the alternative, Rule 4(h) of the Federal Rules of Civil Procedure.  Defendant submits that relief under Rule 60(b) can be granted under subsection (b)(1), (b)(3) or (b)(6).  Defendant's Rule 4(h) claim centers on improper service.  Each of Defendant's arguments are analyzed below.

### A.    Federal Rule of Civil Procedure 60(b)

Defendant contends that default judgment should be vacated because Plaintiff's counsel breached an agreement to provide notice to Defendant's counsel before seeking a default judgment. (Doc. No. 33-1 at 6.)  Defendant alleges that, as a result of the breach, Plaintiff's default judgment should be vacated under subsection (b)(1), (b)(3) or (b)(6) of Rule 60 of the Federal Rules of Civil Procedure.  (Doc. No. 44 at 18.)

Defendant's arguments to vacate under Rule 60 are unpersuasive.  First, Defendant's claim of excusable neglect under Rule 60(b)(1) fails because Defendant has made no substantive showing that it has a meritorious defense.  Second, Defendant's claim of misconduct under Rule 60(b)(3) fails because Defendant has not shown clear and convincing evidence of fraud nor has Defendant shown that the alleged misconduct prevented it from mounting a defense.  Third, Defendant's Rule 60(b)(6) claim fails because the interest of justice favors Plaintiff.

Federal Rule of Civil Procedure 60(b) governs a party's ability to seek relief from a judgment or order.  It states:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding.  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) Any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Generally, a default judgment is disfavored because it has the effect of preventing a case from being decided on the merits. E. Elec. Corp. of New Jersey v. Shoemaker Const. Co., 652 F. Supp. 2d 599, 604 (E.D. Pa. 2009). And while the Third Circuit has expressed a preference against a default judgment, however, it has also cautioned trial courts to "weigh the equities of the situation and the need for the efficacious resolution of controversies." Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656 (3d Cir. 1982). No rigid formula or per se rule applies when a court weighs the equities. Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984).

### 1. Excusable Neglect under Rule 60(b)(1)

Defendant first argues that the default judgment should be vacated for excusable neglect under Rule 60(b)(1) because it believed Plaintiff would "correct the record" and withdraw her motion for default judgment when reminded of the alleged agreement not to seek default without notice. (Doc. No. 44 at 18.) "Rule 60(b)(1) permits a district court to grant relief from a final judgment based upon excusable neglect." Perry v. Commonwealth, 328 Fed. App'x 785, 787 (3d Cir. 2009). In determining whether to set aside a default under Rule 60(b)(1), the Third Circuit

directs the district court to consider whether (1) the defendant has a meritorious defense, (2) the plaintiff will be prejudiced, and (3) the default was the result of the defendant's culpable conduct. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). The district court has wide discretion in this analysis and must weigh the totality of the circumstances when determining whether to vacate a default judgment. Perry, 328 Fed. App'x at 787; Dee Paper Co. v. Loos, No. 15-1513, 2015 U.S. Dist. LEXIS 124114, at *6-7 (E.D. Pa. Sept. 17, 2015) (citing Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988)).

Of the three considerations listed in the preceding paragraph, whether the defendant has a meritorious defense is usually considered the threshold issue. Hritz, 732 F.2d at 1181. The standard for showing a meritorious defense is stringent; it requires a defendant to set forth with specificity the grounds for their defense. Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 Fed. App'x 519, 522 (3d Cir. 2006). "Defendants do not have the right to have a default judgment set aside automatically upon alleging a defense." Id. Once a defense is alleged, the court must look at the substance of that defense to determine whether, if established at trial, it would constitute a complete defense to the action. Id.

To meet its burden of proving a meritorious defense, Defendant must produce more than facially valid statements; instead, its proffer must be substantively sufficient. See Harad, 839 F.2d at 982; Rios v. Marv Loves 1, No. 13-1619, 2015 U.S. Dist. LEXIS 116758, at *14 (E.D. Pa. Sept 2, 2015). For example, in Rios, the district court denied a defendant's motion to vacate an entry of default under Rule 60(b)(1) because the defendant offered no specific facts beyond general denials and conclusory allegations that it had a meritorious defense. 2015 U.S. Dist. LEXIS 116758, at *14. There, the defendant's memorandum of law included general denials that supported their motion to vacate, including, inter alia, an assertion that witnesses would testify that

the plaintiff's claim was baseless.  Id. at *13.  The court held that without any specific facts (e.g., a proposed Answer, exhibits or evidence), the proffered defenses were merely general denials and therefore insufficient.  Id. at *15.

In the instant case, Defendant has offered nothing more than conclusory allegations.  In its brief, Defendant states that "[Defendant] has meritorious defenses as its return policy, which includes the 20% restocking fee, is clear and available to its customers . . . [and] [Defendant] contests . . . that any of its employees communicated to Plaintiff that there was no restocking fee or that [Defendant's] return policy was without conditions."  (Doc. No. 33-1 at 7.)  Defendant further states that it is "prepared to offer evidence" to support its defenses, but, notably, never actually does so.  No Answer, exhibits or evidence is offered.  Without more, Defendant's purported defenses about its return policy and the potential testimony of customer service agents are substantively deficient and therefore Defendant has not met the threshold showing of a meritorious defense.  Accordingly, Defendant's Rule 60(b)(1) claims fails.

Moreover, vacating default judgment would be prejudicial to Plaintiff.  Plaintiff has litigated this case for more than two years and expended considerable resources doing so.  (Doc. No. 37 at 6.)  To re-open this case and require Plaintiff to re-litigate the matter would constitute a severe burden on Plaintiff, who now has a judgment against Defendant.

Finally, the default was the result of Defendant's culpable conduct.  To find that a default was the result of a defendant's culpable conduct "more than mere negligence [must] be demonstrated."  Hritz, 732 F.2d at 1183.  Typically, lack of culpability occurs when the delay "involve[s] innocent mishaps or mere mistakes."  Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 Fed. App'x 519, 523 (3d Cir. 2006).  In the instant case, Defendant's delay was not the result of innocent mishaps; instead, Defendant received repeated notices of the

proceedings concerning default judgment, from both the Court and Plaintiff's counsel, and consciously ignored them.  Such reckless disregard towards the repeated notices of a judicial proceeding satisfy the culpable conduct standard.  See id. (citing Hritz, 732 F.2d at 1183); see also ASD Specialty Healthcare, Inc. v. New Life Home Care, Inc., No. 11-0068, 2013 U.S. Dist. LEXIS 151425, at *13 (M.D. Pa. Oct. 22, 2013) ("Forcing the plaintiffs to continue forward with this case . . . would constitute severe prejudice given the defendants' continual disregard for the court's numerous explicit orders and communications, without proper explanation.").

### 2.  Misconduct under Rule 60(b)(3)

In the alternative, Defendant argues that Plaintiff's request for default in contravention of counsels' alleged agreement was a misrepresentation that justifies vacating default judgment under Rule 60(b)(3).  Rule 60(b)(3) permits the court to vacate a default judgment obtained through fraud or other misconduct.  Braverman Kaskey, P.C. v. Toidze, 599 Fed. App'x 448, 453 (3d Cir. 2015) (citing Stridiron v. Stridiron, 698 F.2d 204, 207 (3d Cir. 1983)).  When deciding whether to vacate a default judgment under Rule 60(b)(3), the court must perform a two-step analysis.  First, the court must determine whether the non-moving party engaged in misconduct.  Advanced Multilevel Concepts, Inc. v. Bukstel, No. 11-3718, 2014 U.S. Dist. LEXIS 169884, at *23 (E.D. Pa. Dec 9, 2014).  If misconduct is proven, then the court must determine if the misconduct "prevented the moving party from fully and fairly presenting his case."  Id.  The moving party bears the burden of proving both steps of the Rule 60(b)(3) analysis by "clear and convincing" evidence.  J & J Sports Prods. v. Weiner, No. 13-6470, 2014 U.S. Dist. LEXIS 36546, at *12 (E.D. Pa. Mar. 20, 2014) (citing Floorgraphics Inc. v. News America Marketing In-Store Servs., Inc., 434 Fed. App'x 109, 111 (3d Cir. 2011)); Brown v. Pennsylvania Railroad Co., 282 F.2d 522, 527 (3d Cir. 1960)).  Uncorroborated, self-serving statements do not satisfy the "clear and convincing"

standard necessary to sustain a motion under Rule 60(b)(3). See J & J Sports Prods., 2014 U.S. Dist. LEXIS 36546, at *12.

With respect to the first step concerning misconduct, Defendant has not shown clear and convincing evidence of misconduct by Plaintiff. Defendant's primary evidence of alleged misconduct, the Notice Letter, is insufficient evidence on several levels. First, it is precisely the kind of self-serving, unilateral correspondence that district courts have found inadequate. See id. Notably, it was unsigned, lists an incorrect outgoing fax number, and was not acknowledged by Plaintiff's counsel. Second, assuming arguendo that an agreement was reached and the Notice Letter reflects its terms, Plaintiff's counsel did not breach the agreement because the covenant related to Tracy Melton, not Defendant.[4] Third, even if the Court further presumes that the agreement existed, the Notice Letter reflected its terms, and the covenant applied to Defendant, Plaintiff's counsel still did not breach the agreement because he provided notice of default by serving a copy of Plaintiff's Request for Default (Doc. No. 24) on Defendant's counsel by e-filing and mail concurrently with the court filing. Careful examination of the letter's text reveals that there was no specified notice period—it merely required "notice"—which Plaintiff's counsel satisfied. See Restatement (Second) of Contracts § 203(b) (stating that the express language of a contract should be given the greatest deference).

Moreover, Defendant also has not provided any evidence that the alleged misconduct prevented it from fully and fairly presenting its case. In fact, a retrospective review of events reveals that Defendant's reason for requesting notice was satisfied. The Notice Letter makes clear that the reason for notice was to allow Defendant time to obtain local counsel, when needed. Email

---

[4] The Notice Letter states "[t]his will confirm our conversation of today wherein you agreed not to take a default of Mr. Melton without giving me notice[.]"

communications submitted by Defendant show that it was able to secure local counsel (Attorney Thomas Bielli) prior to the show-cause hearing on September 26, 2018. But Defendant simply opted not to continue to retain him for the hearing. No attorney representing Defendant appeared at the default judgment hearing. Put simply, Defendant was responsible for not fully and fairly presenting its case. The harm was entirely self-inflicted. Consequently, Defendant's Rule 60(b)(3) claims fails.

### 3. Rule 60's Catch-all Provision: Rule 60(b)(6)

Defendant's contention that default judgment should be vacated under Rule 60(b)(6) will be considered next. Rule 60(b)(6) "vests power in courts adequate to enable them to vacate judgment whenever such action is appropriate to accomplish justice." Devon IT, Inc. v. IBM Corp., No. 10-2899, 2013 WL 6721748, at *3 (E.D. Pa. Dec. 20, 2013) (quoting Klapprott v. United States, 355 U.S. 601, 615 (1949) (internal quotation marks omitted)). "This provision applies only when there are reasons for relief other than those set out in the more specific clauses of Rule 60(b)." Id. A court should employ a "flexible, multifactor approach to Rule 60(b)(6) motions . . . that takes into account all the particulars of a movant's case." Cox v. Horn, 757 F.3d 113, 122 (3d Cir. 2014). However, the court should utilize Rule 60(b)(6) sparingly and only in "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." Id.

Defendant's Rule 60(b)(6) argument is largely based on policy. During oral argument, Defendant's policy justifications included allowing the parties to work cooperatively, encouraging settlement, avoiding unnecessary time and expenses, and promoting judicial economy. While these are important considerations, their application to the present facts do not support vacating the default judgment.

Here, an appropriate exercise of the Court's discretion supports bringing this long-running action to an end. Defendant's contention that re-opening this case would further the interests of cooperation, settlement, and efficiency is rather curious considering Defendant relies on a disputed agreement as its principal piece of evidence, knew that its settlement offer was inadequate to compensate Plaintiff, and did not engage in the litigation or appear at the default judgment hearing. Consequently, there is no reason to award relief under Rule 60(b)(6).

**B.      Federal Rule of Civil Procedure 4(h)(1)**

Defendant also contends that default judgment should be vacated because Plaintiff's service of the First Amended Complaint did not comply with Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure, which governs service on a corporation and requires personal service upon an officer, director or authorized agent of the corporation. Specifically, Defendant argues that Plaintiff's attempt to serve Defendant by certified mail was legally deficient because the envelope was not addressed to any authorized person. Defendant's argument is without merit, however, because service of the First Amended Complaint was timely and complied with Pennsylvania and California law, as authorized under Rule 4(h)(1)(A).

As a general matter, for any legal action to commence, a plaintiff must effectuate proper service under Rule 4. Fed. R. Civ. P. 4; Duc Long v. MTD Prod. Inc., No. 16-4272, 2016 U.S. Dist. LEXIS 192558, at *1 (E.D. Pa. Dec. 29, 2016). Without proper service, a court does not have personal jurisdiction over a defendant and therefore does not have the authority to enter a default judgment against it. See Omni Capital Int'l., Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). When a case is removed to federal court, service is considered proper if it was perfected under state law before removal, or, if previously deficient, service is completed following removal "in the same manner as in cases originally filed

in such district court." 28 U.S.C. § 1448; <u>see</u> <u>Duc Long</u>, 2016 U.S. Dist. LEXIS 192558, at *1.

Once a case is removed, a plaintiff may perfect service within ninety days of removal. Fed. R.

Civ. P. 4(m); 28 U.S.C. § 1448; <u>see also</u> <u>Duc Long</u>, 2016 U.S. Dist. LEXIS 192558, at *1.  If a

plaintiff files an amended complaint and has previously perfected service under Rule 4, she may

satisfy the service requirements of the Federal Rules of Civil Procedure by serving the amended

complaint on a defendant pursuant to Rule 5.  <u>See</u> <u>Native Son, Inc. v. OME Sales, LLC</u>, No. 2012-

93, 2014 U.S. Dist. LEXIS 90137, at *8 (D.V.I. July 2, 2014) (explaining that service of an

amended complaint pursuant to Rule 5 only applies after a party has been served a pleading

pursuant to Rule 4).

At the outset, the Court notes a wrinkle in Defendant's service argument: namely,

Defendant does not challenge service of Plaintiff's Second Amended Complaint, which is the

complaint that the default judgment was entered on.  (<u>See</u> Doc. No. 30.)  Instead, Defendant

challenges the sufficiency of Plaintiff's service of the First Amended Complaint under Rule 4.  In

their filings and during argument in open court, Defendant provided little explanation or analysis

about why it challenges service of the First Amended Complaint and not the Second Amended

Complaint, which was the operative pleading.  However, given its argument and the relief sought,

it appears that Defendant prays that the Court will find that it does not have personal jurisdiction

over Defendant, and therefore did not have the authority to enter a default judgment against it.

The Court presumes that Defendant's attack on the sufficiency of service of the First

Amended Complaint is an attempt to create a domino-like effect that would render service of the

Second Amended Complaint void.  The Second Amended Complaint was served in accordance

with Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure, which states that all papers filed after

the original complaint are served when sent to a registered user by filing with the court's electronic-

filing system. Fed. R. Civ. P. 5(b)(2)(E) ("A paper is served under this rule by . . . sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing[.]"). Plaintiff's Second Amended Complaint was served on Defendant through the Court's ECF notice system. However, if Defendant can show that the First Amended Complaint did not meet the requirements of Rule 4, then Plaintiff's service of the Second Amended Complaint on Defendant would be invalid because an amended complaint may only be served under Rule 5 if a prior complaint was properly served under Rule 4. See Native Son, Inc., 2014 U.S. Dist. LEXIS 90137, at *8. Without proper service, the Court would lack personal jurisdiction over Defendant. See Omni Capital Int'l., Ltd., 484 U.S. at 104.

For reasons that follow, Defendant's argument fails because Plaintiff's service of the First Amended Complaint was timely and met the requirements of Rule 4 for service of process on a corporation. Plaintiff therefore was authorized to serve the Second Amended Complaint pursuant to Rule 5.[5]

Plaintiff's service of the First Amended Complaint was timely because it was served within the timeframe permitted under 28 U.S.C. § 1448. As noted above, following removal to federal court, a plaintiff may perfect service within ninety days of removal. 28 U.S.C. § 1448. Since the case was removed from state court to federal court on October 20, 2017, and Plaintiff served the First Amended Complaint on Defendant on December 2, 2017, she met the ninety-day requirement. Therefore, service was timely under Rule 4.

Service of the First Amended Complaint also was substantively sufficient under Federal Rule of Civil Procedure 4(h)(1). Rule 4(h)(1) details how to properly serve a corporation. It states:

---

[5] In the instant case, there is no evidence in the record that Plaintiff served Defendant under Pennsylvania law before the case was removed. (See Doc. No. 1.) Therefore, only service of the First Amended Complaint is discussed.

> (h) Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
>> (1) in a judicial district of the United States:
>>
>>> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>>>
>>> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1). Thus, Rule 4(h)(1) permits two methods by which a corporation may be served. Under Rule 4(h)(1)(A), a corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Rule 4(e)(1) states:

> (e) Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
>> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]

Fed. R. Civ. P. 4(e)(1). Under this Rule, since this Court is located in Pennsylvania and Defendant was served in California, service may be made pursuant to Pennsylvania or California service rules.

Alternatively, under Rule 4(h)(1)(B), a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Bonilla v. Am. Heritage Fed. Credit Union, No. 18-3293, 2018 U.S. Dist. LEXIS 199301, at *8-9 (E.D. Pa. Nov. 26, 2018).

Under Rule 4(h)(1)(B), "delivery" requires personal service; certified mail is insufficient.  Dorval v. Sapphire Vill. Condo. Ass'n, No. 2016-50, 2018 U.S. Dist. LEXIS 81287, at *8-9 (D.V.I. May 15, 2018) (stating that Rule 4(h)(1)(B) "does not provide for service on an individual by any form of mail.").

Under Pennsylvania law, service by mail upon an out-of-state corporation is governed by Rules 403 and 404 of the Pennsylvania Rules of Civil Procedure.  The rules require that "a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent" and "[s]ervice is complete upon delivery of the mail."  Pa. R. Civ. P. 403, 404; see Douglas v. Wal-Mart Stores, Inc., No. 05-152, 2005 WL 589626, at *1 (E.D. Pa. Mar. 10, 2005) ("Certified mail, return receipt requested, is a proper method of service on an out-of-state corporation under Pennsylvania law.").

Pennsylvania law does not require strict compliance with Rules 403 and 404, provided the plaintiff has made a good faith effort to serve the defendant and the deviation has not affected the substantial rights of the parties.  McCreesh v. City of Philadelphia, 888 A.2d 664, 674 (Pa. 2005).  "What constitutes a good faith effort to serve legal process is a matter to be assessed on a case by case basis."  Moses v. T.N.T. Red Star Express, 725 A.2d 792, 796 (Pa. Super. Ct. 1999).  However, the Pennsylvania Supreme Court has stated that a plaintiff should not be punished "for technical missteps where he [or she] has suppl[ied] a defendant with actual notice."  McCreesh, 888 A.2d at 674.

Similarly, under California law, service can be made upon a corporation by delivering a copy of the summons and the complaint to "the person designated as agent for service of process."  Cal. Civ. Proc. Code § 416.10(a).  In lieu of personal service, substitute service may be effectuated on a corporation by delivering a copy of the summons and complaint "during usual office hours in

[the defendant's] office" or "at [the defendant's] usual mailing address." Cal. Civ. Proc. Code §§ 415.20(b), 416.10, 415.20(a). Thereafter, a copy of the summons and complaint should be mailed to the person to be served at the place where a copy of the summons and complaint were left. Cal. Civ. Proc. Code § 415.20(a). Substituted service is complete on the tenth day after the mailing. Id.

California courts have held that their statutory provisions concerning proper service should be "liberally construed to effectuate service if actual notice is received by the defendant." Team Enters v. Western Inv. Real Estate Trust, No. 08-1050, 2008 U.S. Dist. LEXIS 82883, at *7-8 (E.D. Ca. Sept. 23, 2008); see Tejada v. Sugar Foods Corp., No. 10-05186, 2010 U.S. Dist. LEXIS 116544, at *16 (C.D. Ca. Oct. 18, 2010); Pasadena Medi-Center Associates v. Superior Court, 511 P.2d 1180, 1184 (Cal. 1973). Strict adherence to California's statutes governing service of process is not required. Team Enters, 2008 U.S. Dist. LEXIS 82883, at *7-8. For example, although the classification of person qualified to accept service is specifically listed in section 416.10(b) of the California Code of Civil Procedure, service on a person who is ostensibly, even if not actually, a corporate officer is sufficient under California law. See Pasadena, 511 P.2d at 1186; see also Cal.Code.Civ.P. § 416.10(b). Therefore, "where there has been service upon a corporate agent with ostensible authority to accept it, jurisdiction is established and a claim of defective service in such a case is not a proper basis for setting aside a default judgment entered against the corporation." Gibble v. Car-Lene Research, Inc., 78 Cal. Rptr. 2d 892, 903 (Cal. Ct. App. 1998).

The Court agrees that service of process did not comply with Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure. Rule 4(h)(1)(B) requires personal service of the complaint and summons on an officer or agent of Defendant. Thus, Plaintiff's attempt to serve process by certified mail was insufficient, even if it was sent to an officer or agent of Defendant. However, Rule 4(h)(1)(A)

permits a corporation to be served in a manner prescribed by Rule 4(e)(1) for serving an individual. As explained _infra_, Rule 4(e)(1) permits service by adhering to either Pennsylvania's or California's service rules and service was proper under either jurisdiction's requirements.

Plaintiff's service of the summons and First Amended Complaint on December 2, 2017 was satisfactory under Pennsylvania law because it met Pennsylvania's good faith standard. Pursuant to Rules 403 and 404 of the Pennsylvania Rules of Civil Procedure, Plaintiff sent Defendant service by certified mail, with return receipt requested. Although the signature on the return receipt is illegible and it is unclear if service was made on Defendant or his authorized agent, Plaintiff's attempt to serve Defendant was acceptable under the McCreesh "good faith" standard. The Notice Letter shows that Defendant had actual notice of this case since at least December 8, 2017—a mere six days after service was delivered[6]—and counsel for Defendant has conceded that an authorized agent may have accepted service.[7] Even if there was a technical misstep, the record makes clear that the substantial rights of the parties were not affected by service of process and

---

[6] The date of delivery of the summons and First Amended Complaint listed on the certified mail receipt is December 2, 2017. (Doc. No. 33 at 12.)

[7] During the hearing on May 7, 2019, the following statements appear:

> The Court: "[W]ho signed for [service], do you know?"
>
> [Defendant's Counsel]: "I do not Your Honor[.]"
>
> [ . . . ]
>
> The Court: "[W]hat if the person who signed for [service] is an officer, a manager or general agent, or other agent authorized by appointment or law to receive service of process?
>
> [Defendant's Counsel]: That may be the case Your Honor[.]"

(Doc. No. 44 at 16.)

therefore Plaintiff's service was satisfactory under Pennsylvania law. And at the very least, the fact that Defendant retained counsel who communicated with Plaintiff's counsel shows that Defendant had actual notice of this lawsuit.

Moreover, Plaintiff's service was also acceptable under California law. Like Pennsylvania, California's statutory provisions concerning service of process are liberally construed to uphold jurisdiction, especially when the defendant received actual notice. Here, Plaintiff's service of process did not strictly adhere to Cal. Code Civ. Proc. 416.10. However, given California's liberal application of their service requirements, Plaintiff's service was sufficient to satisfy the requirements of due process. The summons and complaint made its way to the appropriate party and Defendant was able to move quickly to attempt to protect its interests through its counsel. As mentioned above, Defendant secured counsel to respond to this matter less than one week after delivery of the summons and First Amended Complaint. (See Doc. No. 33 at 12.) Therefore, because Defendant had actual notice of the claims against it and suffered no prejudice as a result of the technical violation, the liberal application of the service requirement under California law has been met.[8] For all these reasons, service on Defendant Melton was proper.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for an Order Vacating Default Judgment Pursuant to Fed. R. Civ. P. 60(b) (Doc. No. 33) and Motion to Quash Writ of Execution (Doc. No. 34) will be denied. An appropriate Order follows.

---

[8] While service was proper under either Pennsylvania or California law, the Court acknowledges that Pennsylvania's service rules are more liberal than California's service rules and therefore Pennsylvania law more strongly supports upholding service on Defendant in this case.